KAVANAGH *v.* ST. PAUL FIRE & MARINE INSURANCE CO.

1. EVIDENCE—ADMISSIBILITY—REFUTING INSINUATION ON CROSS-
EXAMINATION.

In an action on a fire-insurance policy for the loss of an automo-
bile, there · was no error in permitting plaintiff, on redirect-
examination, to testify that he was injured during his service
in the late war, and was drawing $80 a month from the
government, in view of his cross-examination as to whether
he used the car for bootlegging, and insinuation that boot-
legging was his only source of revenue.

2. SAME—PURCHASER COMPETENT TO TESTIFY TO VALUE OF DE-
STROYED AUTOMOBILE.

In said action, plaintiff, who testified to the amount he paid
for the automobile, was competent to testify to its value when
destroyed by fire.

3. INSURANCE—DAMAGES—EVIDENCE AS . TO VALUE OF DESTROYED
AUTOMOBILE.

In an action on a fire-insurance policy for the loss of an
automobile, where plaintiff testified to the amount he paid
for it, and what it was worth when destroyed, it cannot be
said there was no evidence of value to go to the jury.

4. SAME—PROOF OF LOSS—ESTOPPEL.

If insurer's agent led insured to believe that he had done all
that he was required to do in the way of filing proof of
loss, but that he would have to wait 60 days for his money,
insurer is estopped from denying liability on the ground that
insured did not file proof of loss within 60 days, as required
by the policy.

5. SAME—LIMITATION OF ACTIONS—ESTOPPEL.

If, after an action on a fire-insurance policy had been season-
ably brought, insured's attorney was induced to discontinue
it on the promise of an authorized agent of insurer that an
appraisal would be had and a settlement made, insurer is
estopped from asserting that a second action, brought after
expiration of the 12-month period limited in the policy, was .
not seasonably brought.

Error to Wayne; Jayne (Ira W.), J. Submitted June 20, 1928. (Docket No. 86, Calendar No. 33,634.) Decided October 1, 1928.

Assumpsit by Frank Kavanagh against the St. Paul Fire & Marine Insurance Company on a policy of insurance. Judgment for plaintiff. Defendant brings error. Affirmed.

*Frederick J. Ward* (*Robert E. Plunkett,* of counsel), for appellant.

*Munro & Powell* and *Leo F. Covey,* for appellee.

Defendant insured plaintiff from loss of his Elgin touring car by fire. The insurance was placed through the Detroit Insurance Agency. The car was destroyed by fire May 26, 1921. On the policy was the 'phone number plaintiff was instructed to call in case of loss or damage. Plaintiff called this number, advised them of the loss, and soon thereafter received a visit from a Mr. Mason with reference to the insurance. Mr. Mason was called under the statute, but did not retain a vivid recollection of the transaction. He, however, did testify that he was an insurance adjuster employed in the office of Mr. Ward, defendant's attorney, and adjusted losses for defendant. Plaintiff's testimony tended to show that Mr. Mason came to see him a week or ten days after the loss, and took him to Mr. Ward's office, where he was turned over to Mr. Plunkett, an attorney associated with Mr. Ward, who took a full statement from him as to the fire and the loss, which was reduced to writing and signed and sworn to by him. Plaintiff says:

"After Mr. Plunkett took the statement from me and I asked him could I get the money today, he said,

'It is not payable until 60 days.' So he says, 'That is all.' ''

On the 60th day from the loss he went back to Mr. Ward's office, but was told that he would have to see Mr. Ward, who it was claimed was not there that day. Plaintiff testified that he went back the next day, and was shown to Mr. Ward's office, and that the man he then met, and who was Mr. Ward, was as matter of fact in the office the day before. He told Mr. Ward what he was there for, and was told by Mr. Ward to read his policy. He soon thereafter employed Mr. Kane as his attorney. Mr. Kane negotiated with Mr. Ward, furnished several affidavits as to the loss, and finally, after Mr. Ward had denied liability, started suit March 13, 1922. After the bringing of suit, it was sought to have an appraisal in accordance with the provisions of the policy, and Mr. Kane suggested it to Mr. Ward by a letter. Mr. Ward's letter called attention to the fact that a suit was pending and that an appraisal could not be had after suit. Mr. Kane conferred personally with Mr. Ward. He testified:

''I said to him that if he would proceed with an appraisal I would drop the suit, if that was the only thing that was hindering the appraisal, and if I was assured that they would go ahead and appraise the car and accomplish a settlement I would drop the suit. I cannot remember either Mr. Ward's exact words, but what he said satisfied me at that time that if I dropped the suit an appraisal would be had and the matter would be settled. I relied upon Mr. Ward's statements to that effect and discontinued the suit. If it had not been for that I certainly would not have discontinued my client's case.''

Mr. Kane selected a Mr. Donohoe as appraiser and Mr. Ward selected a Mr. Dinning. The testi-

mony offered on behalf of plaintiff tends to show that altogether Mr. Kane and Mr. Donohoe made many efforts to get Mr. Dinning to meet with Mr. Donohoe; they were unsuccessful in so doing and finally the present suit was instituted by plaintiff's present counsel.

Fellows, J. *(after stating the facts)*.

1. Plaintiff was buying the car on time. His cross-examination was very vigorous. He was asked if he did not use the car in bootlegging business; this he denied, and it was intimated that he had no other source of revenue. On redirect-examination he was permitted to testify that he was injured during his service in the late war and was drawing $80 a month from the government. In view of the cross-examination and the insinuations injected in the case, this was not error.

2. Plaintiff testified that he paid $1,375 for the car, and that it was worth between $1,100 and $1,200 when destroyed. He was competent to testify to its value. *Printz* v. *People,* 42 Mich. 144 (36 Am. Rep. 437). It cannot be said there was no evidence of value to go to the jury.

3. Defendant insists that plaintiff may not recover because proof of loss was not filed within 60 days and the present suit was not instituted within 12 months as required by the terms of the policy. Both Mr. Mason and Mr. Ward were called for cross-examination, but neither had any very distinct recollection of the transaction, and neither was able to deny specifically plaintiff's testimony. Except what appears in their testimony, there was no proof on behalf of defendant. Plaintiff's testimony would indicate that the statement taken by Mr. Plunkett, reduced to writing and signed and sworn to had the

essentials of proof of loss. Defendant does not produce it nor is there any testimony in denial of what is testified to by plaintiff, nor is it denied that Mr. Ward's office received and still has plaintiff's affidavit showing his loss. But beyond that he was told in substance, when he asked if he could have the money then, that he would have to wait 60 days, and was dismissed with the statement that "that is all." Mr. Mason testified that he was an adjuster. Mr. Ward testified that he was attorney for the company. It is urged that it is not shown that Mr. Ward had sufficient authority from the company so that his acts became the acts of the company, at least, that sufficient authority was not shown to estop the company by his acts. His testimony covers several pages of the record; from it we think it sufficiently appears that he had sufficient authority from the company so that his acts in handling claims for losses were the acts of the company. Testifying to the genesis of his employment by defendant, he says:

"When the St. Paul went into the agency or when the St. Paul company went in there doing business with the Detroit Insurance Agency, writing their automobile business, Louis Grossmith, who is the head of the automobile department of the St. Paul, was here and made the connection at that time; arrangements were made with Louis Grossmith that the loss part of it would be handled through my office and the Detroit Insurance Agency was advised at that time to refer all losses pertaining to the St. Paul policies into my office."

If the paper prepared by Mr. Plunkett and signed and sworn to by plaintiff and left with Mr. Plunkett was proof of loss, and the proofs are open to such inference, this provision of the policy was complied with. If plaintiff was given to understand by an

authorized agent of defendant that he had done all he was required to do but would have to wait 60 days for his money, and the proofs are likewise open to such inference, the defendant is estopped from now denying liability on the ground that he should have done something further, *i. e.*, filed proof of loss. If, after a suit had been seasonably brought, plaintiff's attorney was induced to discontinue it on the promise of an authorized agent of the company that an appraisal would be had and a settlement made, and the proofs are likewise open to such inference, the defendant is estopped from asserting that the present suit was not seasonably instituted. See *Turner* v. *Casualty Co.*, 112 Mich. 425 (38 L. R. A. 529, 67 Am. St. Rep. 428); *Hanchett* v. *Casualty Co.*, 210 Mich. 678; *Dolsen* v. *Insurance Co.*, 151 Mich. 228; *Wicking* v. *Insurance Co.*, 118 Mich. 640; *Douglas* v. *Insurance Co.*, 215 Mich. 529. The trial judge did not err in refusing to direct a verdict for defendant.

The judgment will stand affirmed.

FEAD, C. J., and NORTH, WIEST, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred.